Stephen A. YOUNG, Plaintiff,

v.

Robert C. WATSON, Commissioner of Patents, Defendant.

Civ. A. No. 3252–56.

United States District Court
District of Columbia.

Aug. 1, 1958.

Harry C. Robb, Jr., Washington, D. C., John W. Robb, Frank B. Robb, Cleveland, Ohio, Albert M. Zalkind, Washington, D. C., of counsel, for plaintiff.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., for the Government.

McLAUGHLIN, District Judge.

This action is brought pursuant to the terms of Section 145, Title 35 United States Code, for the purpose of obtaining an order of this court authorizing the Commissioner of Patents to issue to plaintiff, as applicant therefor, a patent on an application for a sink strainer. Plaintiff alleges the device under consideration contemplates the provision of a novel arrangement of parts and functions not previously obtainable in the prior art.

Relying as references on patents to Schultis No. 2,163,453 and Frances No. 2,225,693 the examiner of Patent Office denied the patent and the Board of Appeals of the Patent Office approved the action of the examiner on the basis that the device sought to be patented would have been obvious to one ordinarily skilled in the art involved.

The specific determination of the Patent Office forming the basis of plaintiff's action herein is the rejection of Claims 11 through 15 in the application before the Patent Office. Claim 11, characterized as illustrative in the decision of the Board of Appeals affirming the decision of the examiner, is as follows:

"11. In a sink strainer, in combination, a hollow body portion having an outlet portion at its lower end, said outlet portion having a valve seat thereon, a crumb cup the bottom of which is apertured for liquid drainage disposed within said hollow body, said bottom of the crumb cup having a vertically elongated valve stem guide member centrally thereon, a valve stem separate from the crumb cup guidingly mounted in said guide member to move up and down in the latter, a valve member fixed to the stem below the bottom of the crumb cup, a handle on the upper end of the stem for rotating the latter in opposite directions, said stem having a screw thread portion on its lower and below the valve carried thereby, and the hollow body portion being provided on its lower end outlet portion centrally thereof with an internally threaded bushing in which the screw thread portion of the stem is received, whereby on turning the stem in one direction the valve will be raised off said seat, and on turning the stem in an opposite direction the valve will move downwardly against said seat."

After a careful examination and consideration of the entire record including statements and contentions of counsel contained therein and after a full consideration of the briefs, including authorities relied on therein filed by counsel for both parties to the action, the Court is of the opinion that the primary issue which is dispositive of this case is adequately developed and outlined in the following excerpts consisting, in part, of statements of counsel for defendant, contained in the record and, in part, of statements contained in the brief filed by counsel for defendant.

"The question herein is one of invention. Now, by that, of course we mean that the Patent Office has not held in this case that the plaintiff's application shows something that is old, or even something that is not an improvement.

"In fact, I think we can assume from the Board's decision that the Board recognized that the plaintiff did disclose something new here, and something which undoubtedly was an improvement over prior devices, but the section of the statute that we are concerned with is section 103 of Title 35, which as Your Honor knows, requires that a patent cannot be obtained though the invention is not identically disclosed or described, if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made, to a person having ordinary skill in the art to which said subject matter pertains. * * "

"Now, the plaintiff's fundamental idea is represented in claim 11. The Board of Appeals held that claim to call for a strainer which was an improvement of the sink strainer shown in the patent to Schultis. At the same time, the Board held this improvement was one which had been incorporated in a strainer which was shown in the Frances patent.

"So the theory of the Patent Office's refusal to grant a patent is that the plaintiff here has done nothing more than combine two of the best features to two known devices to get the benefit of them all.

"Now, under the authorities—or under ordinary circumstances, at least, this is not considered to be invention, but rather to be the type of routine work that we should expect the ordinary designer, skilled in the art, to perform. * * * "

"Specifically, claim 11 calls for two things. First, a sink strainer which incorporates a valve which is mounted for reciprocation and rotation; reciprocation up and down vertically, and in rotation about an axis; the crumb cap through which the operator for the valve extends, provided with a guide."

"The second thing is the valve operator. That is, there is provided two mating screw thread members which cause the valve upon rotation to open and close.

"Now, Schultis patent shows, the Board held, the basis idea. That is, a sink strainer with a valve, that has a stem, and a guide member in the crumb cup. There we take issue with the plaintiff for the first time, in as much as he contends that no guide is provided in Schultis. The Board of Appeals took the view that Schultis did provide a guide. The valve in Schultis being opened and closed by rotation as in this case, except that the raising and lowering of the valve is effected by a cam in Schultis, rather than screw threads.

"Now, this has certain disadvantages, not the least of which is the fact that the valve was held in place only by gravity, whether in open position or in closed position. However, the Frances device, although it is somewhat different in its general arrangement—that is, here the crumb cup itself acts as a valve—it does show a valve in the crumb cup, and it does show the use of mating screw thread members to cause the valve to rise and lower.

"So the only question for the Court is whether it would be beyond the skill of the art to improve the Schultis device by substituting a screw thread operator for Schultis cam valve operator. * * * "

"Claim 11 is exemplary and its terminology may be taken as presenting the basic question of patentability. That claim, which is reproduced in full on pages 1 and 2 of the Board's decision (Defendant's exhibit 1, paper E), calls for the following elements:

"1. an outer body portion providing a valve seat;

"2. an apertured crumb cup in the outer body and having an elongated guide for a valve stem;

"3. a valve stem mounted in the guide member to move up and down therein;

"4. a valve member secured to the stem below the crumb cup;

"5. a handle on the upper end of the stem for rotating it; and

"6. a mechanism for causing up and down movement of the valve comprising (a) a screw threaded portion on the lower end of the valve stem and (b) an internally threaded bushing on the outer member which receives the screw thread on the stem.

"The Prior Art.

"The Schultis patent, No. 2,163,-453 (Defendant's Exhibit 1, paper B), discloses a sink strainer having the following elements:

"1. an outer body portion 1 providing a valve seat 7;

"2. an apertured crumb cup 11 in the outer body and having an elongated guide 14 for a valve stem;

"3. a valve stem 9 mounted in the guide member to move up and down therein;

"4. a valve member 8 secured to the stem below the crumb cup;

"5. a handle 10 on the upper end of the stem for rotating it; and

"6. a mechanism for causing up and down movement of the valve comprising (a) a cam 20 with tapering side faces 21 mounted on the stem and (b) a member 15 mounted on the outer member having upstanding flanges 17 for cooperation with the cam * * *"

"In summary, the Schultis disclosure, when analyzed in relation to claim 11, satisfies the first five of the enumerated elements of the claim. The only issue of substance relates to the last element, the operator for the valve."

" * * * the true issue as to Frances is whether its valve-operator would teach anything in the nature of an improvement of the cam-type operator in Schultis * * *"

" * * * plaintiff raises these * * * objections to Frances: (a) that wings 62 are not screw threads and, thus, would not teach the use of screw threads on the Schultis valve stem, and (b) that aside from any question of nomenclature, wings 62 cooperate with threads 64 to perform a 'locking' function and not a valve opening and closing function."

" * * * the evidence seems to point to the fact that the Board of Appeals was technically correct in designating Frances' wings 62 as screw threads. * * *"

"The Question for the Court.

"* * * Those in the sink strainer art had available the following information:

"a. Prior commercial strainers, such as plaintiff's Exhibits 4, 11 and 12, required hand lifting of the valve or basket and a hit-or-miss balancing operation on a bridge to keep the stopper open.

"b. Schultis improved on these devices by effecting greater control of the opening of the valve. He achieved this by providing for mere rotation of the valve stem, the lifting being effected by a cam. Schultis' strainer was still open to the objection that the valve was held closed by gravity only and could be opened by back pressure.

"c. The Frances patent taught the art that strainer valves could be raised, lowered and locked in place by using wings (partial threads) on the valve stem to cooperate with stationary screw threads. Whatever faults the Frances strainer had, its valve could be locked in closed position and, obviously, could be adjusted to partially open position if desired.

"The issue for the Court is whether the Patent Office committed clear error in holding that one normally skilled in the art and having these facts at his disposal would alter the

Schultis device to provide the valve with a screw-thread operator in order to achieve the benefits of that arrangement as taught by Frances. * * * "

On the basis of the foregoing the Court concludes that the primary issue hereinbefore referred to is whether the Schultis patent as affected by the Frances patent would have made the rejected claims of the subject device obvious to one ordinarily schooled in the sink strainer art; in other words, whether plaintiff, as applicant for a patent, in making the new and useful improvement set forth in claim 11 "has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art" as a result of Schultis as affected by Frances.

The issues collateral to the primary issue are (1) whether the Court may consider the exhibits relied upon by plaintiff as models or examples of the devices described in the reference patents in reaching its determination of the primary issue; (2) whether an engineering text book general description of the character of a "screw thread" and the dictionary definition of an "interrupted screw" are so controlling as to prohibit the Court from making a judicial determination, on the basis of all the pertinent evidence, as to whether the references teach a screw thread such as that taught in claim 11 of the subject device; and (3) whether, in the light of the evidence in the record, lack of showing of familiarity on the part of the subject applicant with the reference devices and lack of showing of use of said devices in the sink strainer art and lack of specific evidence of failure after repeated unsuccessful efforts of those schooled in the art to discover the improvement sought to be patented renders unavailable to the creator of the subject device the benefit of the effect of wide commercial acceptance of his improved device.

Considering first the collateral issues:

■ As to the collateral issues (1) the plaintiff identified Exhibits 10 and 14 as models or examples of the sink strainers corresponding, respectively, to the claims in the references, to wit, in the Schultis and Frances patents. The exhibits were offered and admitted in evidence over objection that the offer was based on insufficient foundation in that plaintiff was not technically schooled in patents and patent interpretation, and, consequently that there was, insufficient evidence that the models correspond to the reference disclosures. Defendant relies on Bullard Company v. Coe, 79 U.S.App.D.C. 369, 147 F.2d 568, as rendering the models inadmissible. The Court is not persuaded that the models should have been excluded. The witness was sufficiently qualified, in the Court's opinion, as schooled in the art involving sink strainers. Furthermore, an inspection of the models, to wit, Plaintiff's Exhibits 10 and 14, vis a vis a reading of the disclosures in the Schultis and Frances patents respectively, does not appear to establish substantial departure in the models from the pertinent claims in those patents.

■ As to collateral issue (2) defendant in its brief, states "that the Board of Appeals was technically correct in designating Frances' wings 62 as screw threads." This statement is made in support of the contention that the teaching of screw threads to open and close the valve in the sink stopper renders obvious the screw thread on the valve stem in the subject device. On page two of the opinion of the Board appears the following:

"Pointing out that the valve 8 of the Schultis sink strainer device is controlled by rotation of the valve stem 9 connected thereto, the examiner takes the position that it would not amount to invention to substitute for the valve carried cam 20 and the cooperating fixed cam plate 15 which control the opening and closing of the valve 8 in this reference, a threaded arrangement for this purpose such as that shown in Frances comprising the thread forming lugs 62 on the valve stem 57 and the cooperating threads 64

in the bushing member carried by the spider therein."

It is to be noted that the specific reference is to "the threaded arrangement * * * such as that shown in Frances comprising the thread forming lugs 62 on the valve stem 57." Further on in the opinion the Board states that Frances discloses " * * * the use of a threaded arrangement involving threads on a valve stem member in association with internal threads on a bushing element carried by a fixed spider". The text book cited by Defendant, namely "Analytical Mechanics for Engineers" by Seely and Ensign defines or characterizes a screw thread as "an inclined plane wound around a cylinder" and the dictionary (Webster's New International) establishes that in an interrupted screw the thread may extend less than completely around a cylinder, as, for illustration, in a breech block mechanism.

The Court accepts, of course, the correctness of the statements in the text book and the dictionary above quoted, but is not persuaded that they are determinative of the issue as to whether a full consideration of the Frances patent leads to the conclusion that it teaches "a stem having a screw thread portion * * * with an internally threaded bushing in which the screw thread portion is received" as specifically claimed and taught in claim 11 of the subject patent application. That issue, in the Court's opinion, the Court is required to pass upon judicially in the light of all the surrounding evidence. As to the second collateral issue, therefore, the Court concludes that it is not foreclosed by the citations relied on by defendant, i.e., the engineering text book as to the general characteristics of a screw thread and the dictionary definition of an interrupted screw, from making a judicial determination, on the basis of all the evidence, as to whether the references teach a screw thread such as that present in the subject device as set out in claim 11 relating thereto.

As to the third collateral issue, stated above, the Court is of the opinion that the record establishes that the plaintiff is familiar with the sink strainer art through long contact therewith as a result of years of experience as an employee and an official of companies engaged in selling and manufacturing plumbing equipment and that the witnesses Kruse and Case are also qualified concerning the subject. The testimony demonstrates that many sink strainers have been manufactured and that some have been abandoned in the face of the success of the subject device. The companies engaged in the manufacture of sink strainers include the Bridgeport Brass Company for which company witness Case testified he worked for more than 20 years, and which company was a competitor in the sink strainer field with plaintiff, the American Radiator Company and others. In the Court's opinion the testimony in the record demonstrates that efforts were being put forth over a long period of time by those skilled in the art to produce a product as acceptable as the subject device and, obviously that such efforts were unsuccessful.

The Court is of the opinion that the record satisfies the requirements of the rule in Svenson v. Watson, 100 U.S.App. D.C. 44, 241 F.2d 449, that repeated efforts were made unsuccessfully by others, having knowledge of the art, to solve the problem.

The reference patents have been existent for years and under the rule announced by Judge Hand in Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 147 F.2d 345, 348, could have been effectively relied upon to invalidate an application seeking to accomplish a patent on a conflicting article even if such patents had lain dormant throughout their existence. By the same token it would seem reasonable that those engaged in manufacturing involving the sink strainer art should be charged with awareness of the existence of the subject patents and that their manufacture of sink strainers which failed to include the widely accepted improvement contained in the subject patent should be accepted as evidence of unsuccessful efforts to

solve the problem solved by the subject patent.

■ The three collateral issues having been ruled upon, the Court is brought to a determination of the primary issue. On the basis of the entire record, in the light of the pertinent provisions of the applicable statute and upon consideration of the subject matter as a whole, the Court concludes and finds that the Schultis patent as affected by the Frances patent would not have made the rejected claims of the subject device obvious to one schooled in the sink strainer art.

■ The Court is conscious of the great weight to which the opinion of the members of the Board is entitled, and the Court in its decision accords such weight to said opinion. The Court recognizes the Board as a group of highly qualified experts whose decisions should not be reversed without conviction on the Court's part that the Board is clearly in error. The Court is likewise conscious of the further fact that the responsibility rests upon the Court in this type of action to make a judicial determination on the basis of a consideration of all the evidence in the record. This the Court has endeavored to do here. The Court regards as applicable in the instant situation the following excerpt from the opinion of the Circuit Court of Appeals of this Circuit in L-O-F Glass Fibers Co. v. Watson, 97 U.S.App.D.C. 69, at pages 74 and 75, 228 F.2d 40, at page 45:

"While there is evidence upon which, in part, the findings can be supported, on the entire evidence we are left with the definite and firm conviction that a mistake has been committed. On the record made and with the exhibits before us, we are permitted a 'subjective opinion or formulation of a judgment,' which when so credited, makes clear that the 'combination and improvement admittedly brought about are the product of creative talent' which lifts the * * * claim to the level of patentability over and above the prior art cited."

On the basis of the entire evidence including a careful inspection of the subject claims and device and the claims and devices covered by the references, the Court concludes and finds that the Schultis device in combination with the Frances device is so dissimilar in construction and operation to the construction and operation described in and contemplated by claim 11 and the other claims involved in the subject matter that it is clear error to hold that the construction and operation described in claim 11 would be made obvious to one normally schooled in the sink strainer art by the references relied on by defendant.

■ The Court concludes and finds that the cam element in Schultis is not anticipatory of the screw thread portion taught in claim 11 of the subject patent and that the Frances disclosure in combination with Schultis likewise fails to constitute an anticipation; that the discontinuous wings or lugs on the valve stem in Frances do not constitute anticipation of the screw threads in the subject device and that their raising and lowering of the crumb cup in Frances appear to be so slight as to be incidental to their function as part of a locking device and not analogous to the valve opening and closing accompanying the rotating of the valve in claim 11 of the subject patent. With fullest deference to the technical skill and ability of those in the Patent Office who have made the determination of non-patentability of plaintiff's device, the Court is impelled to observe that, in the Court's opinion, it is so unrealistic to conclude that the cam attachment in Schultis and the projections or lugs in Frances make obvious the screw thread design and operation in the subject patent to one normally schooled in the art, that such a conclusion is clearly an erroneous one.

The Court is of the opinion that under the rule announced in L-O-F Glass Fibers Co. v. Watson, supra, the plaintiff is entitled to a patent on the subject device because the references would not have made the rejected claims, herein in-

volved, obvious to one ordinarily schooled in the pertinent art, i.e. the sink strainer art.

The Court concludes that plaintiff is entitled to receive Letters Patent on the claims herein involved.

Counsel for plaintiff will prepare appropriate findings of fact and order.